UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :    Chapter 13

RODNEY P. BRADLEY                                  :

Debtor              :    Bankruptcy No. 07-14607bf

.................................................

MEMORANDUM

.................................................

Presently before me on a consolidated evidentiary record are the following

three matters: the debtor's objection to a proof of claim filed by purported creditor

Countrywide Home Loans, Inc.[1];  objections to confirmation of the debtor's proposed

amended chapter 13 plan by Countrywide and the chapter 13 trustee, William C. Miller,

Esq.; and the chapter 13 trustee's motion to dismiss this case.

After the hearing, I took the matters under advisement.  And after

submission of memoranda by the three parties, these matters are ripe for adjudication.

I.

The following facts were proven at the consolidated hearing, subject to

judicial notice under Fed. R. Evid. 201, or undisputed from court records in an adversary

proceeding removed to this court by the debtor, docketed as Adv. No. 07-0328, and later

---

[1]As will be explained later, I find that Countrywide is not a creditor.  However it
still has standing to object to the debtor's proposed plan as a party in interest, as the plan purports
to provide for Countrywide and to require it to set aside a prepetition sheriff sale.  See generally
11 U.S.C. § 1324(a); In re Schlupp, 2006 WL 1390585, at *2 (E.D. Pa. May 18, 2006).
Moreover, the debtor has also filed a proof of claim on behalf of Countrywide, and Countrywide
has filed its own claim in response.

remanded to state court upon motion of Countrywide as set forth in an order of this court dated October 29, 2007.

On December 26, 2001, Countrywide Home Loans, the holder of a mortgage on Mr. Bradley's real property located at 263 Ardmore Avenue, Lansdowne, Pennsylvania, filed a complaint in mortgage foreclosure in the Court of Common Pleas of Delaware County.[2]  See Adv. Proc. 07-0328, Notice of Removal, Appendix A (state court docket).  Judgment was entered in Countrywide's favor on February 29, 2002 in the amount of $91,862.  Id.  Three unsuccessful chapter 13 bankruptcy cases filed by Mr. Bradley, docketed at  Bankr. No. 02-18892; Bankr. No. 04-18657; and Bankr. No. 05-16800, thereafter stayed several scheduled foreclosure sales.  Id.

In Mr. Bradley's third chapter 13 case, filed on May 12, 2005, Countrywide quickly moved to dismiss, asserting that this bankruptcy petition had been filed in bad faith.  The parties resolved that motion with a settlement stipulation, which stipulation was ultimately approved by this court on July 19, 2005.  Bankr. No. 05-16800, docket ##7, 19.  Countrywide also timely filed a $91,112 secured claim in that third case, which claim consisted of an asserted prepetition arrearage of $57,290.03 and averred a principal balance due of $78,045.26.  Mr. Bradley did not object to Countrywide's claim.

After the debtor's default of the July 2005 stipulation, id. at #24, resolved by another stipulation and a subsequent default of that second stipulation, id., at ##37, 38, 63, on November 1, 2006, I granted relief from the automatic stay to Countrywide.  Id., at

---

[2]The complaint was filed by Washington Mutual Bank, but at some point Countrywide was substituted as plaintiff.  For ease of use, I will refer only to Countrywide.

# 66.  Therefore, Countrywide was permitted to resume the foreclosure process it began in 2001.

The state court docket later reflects an "affidavit pursuant to rule 3129.1" docketed on November 9, 2006, and a certificate of service docketed February 8, 2007, possibly constituting notice of an upcoming foreclosure sale.  Then on February 16, 2007, Mr. Bradley's home was sold at foreclosure, with Countrywide as the successful bidder.

On February 27, 2007, Mr. Bradley filed in state court a petition to set aside the sale based on an alleged lack of adequate notice to him of the scheduled foreclosure sale.  See Notice of Removal, Adv. Proc. 07-0328.  As will be discussed below, that petition is still pending.

Mr. Bradley's 2005 chapter 13 case was ultimately dismissed on July 3, 2007, on motion of the chapter 13 trustee for failure to tender required plan payments.  See Bankr. No. 05-16800, docket #78.  Prior to dismissal of that 2005 case, the chapter 13 trustee had disbursed $12,574.40 to Countrywide on its $57,290.33 arrearage claim, with the trustee reporting that $44,715.93 was still due and owing.  See Chapter 13 Standing Trustee's Final Report, Bankr. No. 05-16800.  In addition, the trustee held $9,410.00 that had not been distributed.  Id.

Mr. Bradley filed his above-captioned fourth chapter 13 petition on August 9, 2007, roughly one month after dismissal of his third case.  On September 10, 2007, Mr. Bradley removed the entire state court foreclosure action between him and Countrywide to this court.  Bankr. No. 07-14607, docket #37; Adv. Proc. No. 07-0328.  Upon Countrywide's motion, and for reasons detailed in my October 29th ruling, I remanded

3

the adversary back to state court and granted relief from the stay for both parties to

proceed with the foreclosure litigation.  Adv. Proc. No. 07-0328, docket ##2, 5.

Because of this fourth bankruptcy filing and the removal and remand of the

foreclosure action, adjudication of the debtor's state court petition to set aside the

foreclosure sale was delayed, although a hearing on that petition was held in May 2008.

The sheriff's deed to the Lansdowne property has not been issued to Countrywide,

pending the outcome of the debtor's challenge to the foreclosure sale.  However, the

foreclosure sale to Countrywide took place before the present fourth chapter 13

bankruptcy case commenced.

Despite this prior foreclosure sale, upon passage of the claims bar date

under Fed. R. Bankr. P. 3002(c), Mr. Bradley filed a secured proof of claim on

Countrywide's behalf, signed by debtor's counsel, dated February 18, 2008, and docketed

as Claim #8.  Ex. D-3; see generally Fed. R. Bankr. P. 3004.  This claim is confusing,

stating that the amount of Countrywide's claim is $90,000 (box 1) and also stating that

the amount of its secured claim is $110,000 (box 4), equal to the purported value of the

real estate collateral.[3]  Ex. D-3.  This claim also asserts that the amount of the arrearage

on Countrywide's secured claim is only $15,000.  Id.

On May 5, 2008, Countrywide filed an "amended" secured proof of claim.

This "amended" claim asserts that Countrywide is owed $151,475.31, with a mortgage

arrearage of $76,656.63.  Ex. D-1.  Countrywide's proof of claim also contends that the

value of its real estate collateral is $0.

_____

[3]The value of the realty on the debtor's proof of claim is also different from the
value he listed on his bankruptcy schedules.

4

One day after the debtor filed his secured proof of claim on behalf of Countrywide, he filed an amended chapter 13 plan, ex. D-4, which plan he now seeks to confirm over the objections of the trustee and Countrywide.  This February 19th plan provides in pertinent part:

\*\*\*

2. The Debtor shall submit to the supervision and control of the Trustee payments in the total amount of $2000 through February 2008, and thereafter making monthly payments of $400/month to the Trustee for the remaining 50 months of the plan.

3. The Debtor's mortgagee, Countrywide Home Loans, Inc. ("CHL") claims to have purchased his home at a sheriff's sale.  The Debtor has filed a proof of claim for CHL in this case in the amount of $90,000 and arrears of $15,000.  As a result, CHL is obliged to set aside the sale and accept this sum as payment for its arrears.  The Debtor has also filed a Petition to Set Aside a sheriff's sale which took place, unknown to the Debtor and his prior counsel, when the Debtor and his prior counsel were attempting to negotiate a resolution of a motion for relief from the automatic stay which had been entered in a prior case despite the fact that the Debtor had funds available to cure the alleged default.

4. The various claims against the Debtor's creditors are classified in this plan as follows:

A. Class One: Administrative Claims.  These claims include a priority claim of the Internal Revenue Service of $2,479.41, remaining attorney fees of $2474, and the Trustee's commissions.

B. Class Two: The claim of CHL.  The Debtor will treat this claim as described in paragraph 3.

C. Class Three: All other claims against the Debtor that are timely filed and ultimately allowed.

5. The payments received by the Trustee from the Debtor shall be distributed first to allowed Class One claims until

5

> they are paid in full; secondly to the Class Two claim arrears
> of $15,000; and thirdly to Class Three claimants pro rata.
> *** 
> 9. Upon completion of this or any other duly confirmed plan,
> as amended, all debts listed in the Debtor's Schedules or
> provided for by this Plan which are dischargeable shall be
> discharged. The Debtor believes that he will be successful in
> setting aside the sheriffs sale of his home and will proceed to
> cure his arrears to CHL, leaving due thereafter to CHL only
> his regular mortgage payments.

Ex. D-4.[4]

On September 11, 2007, Mr. Bradley filed a motion in the 2007 bankruptcy

case requesting a transfer of the $9,410 held by the chapter 13 trustee as undistributed in

the debtor's prior, dismissed 2005 bankruptcy case.  The debtor averred in that motion:

"It is critical to the plan of the Debtor in this case that all available funds be paid to the

Trustee.  He has therefore provided in his plan that the $5,500 paid by him to the Trustee

in the Prior Case be paid to the Trustee in connection with this case."  Motion, ¶ 5 (docket

entry #38).  The trustee opposed such relief.  See docket entry #43.

On October 16, 2007, the trustee and the debtor reached an accord.  I

therefore approved the debtor's request, docketed in Bankr. No. 05-16800, and the trustee

distributed those funds to the debtor.  Upon receipt, the debtor used the distribution from

the trustee from his 2005 case to pay tuition toward two masters degrees, rather than

tender all or part of that refund to the trustee as a component of his proposed plan in his

2007 case.  (The trustee bases his motion to dismiss for bad faith on the debtor's failure to

pay over these funds into the plan.)

---

[4]There is no paragraph 6 in the proposed amended plan.

In the instand case, a number of unsecured proofs of claims have been filed totaling about $6,300. And the IRS has filed a priority claim in the approximate amount of $2,500. The debtor testified at the confirmation hearing that he has saved over $20,000 because Countrywide will not accept any monthly payments from him.

II.

The debtor argues that Countrywide's failure to file any proof of claim in this fourth chapter 13 case by the claims bar date found in Fed. R. Bankr. P. 3002(c) allowed him to file a proof of claim on its behalf under Fed. R. Bankr. P. 3004. Moreover, he maintains that Countrywide should be precluded from later asserting that the debtor's claim was incorrect. Thus, in the debtor's view, Countrywide is limited to holding a $15,000 arrearage claim, which claim is provided for by the debtor's amended plan.

Both the trustee and Countrywide respond that the debtor's proof of claim is not preclusive, that there was no evidence to demonstrate its accuracy, and so even if the debtor could cure his mortgage arrearage, the plan is underfunded. The trustee also contends that this amended plan is not filed in good faith and that the debtor, who testified that he had saved more than $20,000, did not propose a plan that was in the best interest of creditors under section 1325(a)(4).

In addition, Countrywide (and to a lesser extent, the trustee) contend that the debtor's amended plan cannot be confirmed because his Lansdowne realty was sold at a foreclosure sale and he has no statutory right to cure his mortgage.

7

In deciding these disputes, one should first consider Countrywide's status in this chapter 13 case and its treatment under the debtor's proposed amended plan.  In determining confirmation, I note that the debtor has the ultimate burden of persuasion that his proposed chapter 13 plan meets all the statutory requirements for confirmation.  See, e.g., In re Hill, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001) ("The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation."); In re Heath, 182 B.R. 557, 560 (B.A.P. 9th Cir. 1995) ("In general, the debtor carries the burden of proving, by a preponderance of the evidence, that the plan complies with the statutory requirements of confirmation."); In re Weisser, 190 B.R. 453, 454 (Bankr. M.D. Fla. 1995); In re Norwood, 178 B.R. 683, 687 (Bankr. E.D. Pa. 1995); see also In re Ziegler, 88 B.R. 67, 69 (Bankr. E.D. Pa. 1988).  While this burden is lessened when the chapter 13 trustee recommends confirmation, see In re Hines, 723 F.2d 333 (3d Cir. 1983), the trustee has made no such recommendation in this instance.  Furthermore, whether or not a specific confirmation objection has been made, this court and the chapter 13 trustee have the power to independently determine that the debtor's plan meets all statutory requirements.  See In re Szostek, 886 F.2d 1405, 1414 (3d Cir. 1989).

As noted above, a foreclosure sale of the debtor's property took place on February 16, 2007, almost six months prior to the filing of the current chapter 13 case.  In Pennsylvania, once the hammer falls at a sheriff's sale, a mortgagor loses all but bare legal title to the property and retains a mere possessory interest.  See In re Davis, 281 B.R. 626, 633 (Bankr. W.D. Pa. 2002); In re Townsville, 268 B.R. 95, 118 (Bankr. E.D. Pa. 2001).  Any right of the mortgagor to tender funds to prevent the sale, see 41 P.S. §

8

404(a)[5] (up to an hour before the sale), also is lost.  In re Davis, 281 B.R. at 633.  The

purchaser acquires a vested equitable interest, or equitable title, which becomes complete

title upon complying with the terms of the sale.  Id.; see In re Townsville, 268 B.R. at

118; Pennsylvania Company for Insurance on Lives v. Broad Street Hospital, 354 Pa.

123, 128 (1946).  Western Flour Co. v. Alosi, 216 Pa. Super. 341, 345 (1970).  When the

purchaser is a lien creditor entitled to all or part of the proceeds of the sale, the purchaser

need only provide proof to the sheriff of that fact and payment of all legal costs of the sale

to comply with the terms of the sale.  See Pa. R.C.P. 3133 (lien creditor as purchaser).

"The deed, delivered when the terms of the sale have been fully complied with, is merely

evidence of the title that the purchaser received when the hammer fell.  The title received

at the sale is inchoate; upon delivery the deed relates back to the date of the sale."  In re

Davis, 281 B.R. at 633-34, citing In re Pulcini, 261 B.R. 836, 840 (Bankr. W.D. Pa.

---

[5]Under Pennsylvania law a "residential mortgage debtor" (or someone acting on
her behalf) may cure a default in a "residential mortgage obligation" after entry of the foreclosure
judgment and up to one hour prior to the foreclosure sale.  41 P.S. § 404(a).  But a residential
mortgage is defined as follows:

> "Residential mortgage" means an obligation to pay a sum of money
> in an original bona fide principal amount of fifty thousand dollars
> ($50,000) or less, evidenced by a security document and secured by
> a lien upon real property located within this Commonwealth
> containing two or fewer residential units or on which two or fewer
> residential units are to be constructed and shall include such an
> obligation on a residential condominium unit.

41 P.S. § 101.  (A bill has been introduced in the Pennsylvania Senate to increase the principal
amount to $217,873.  See 2007 Pennsylvania Senate Bill #483, July 8, 2008.)
    Nevertheless, some lenders include a contractual right to cure in their form
mortgage agreements, overcoming Pennsylvania's limit.  See In re Brown, 75 B.R. 1009, 1011
(Bankr. E.D. Pa. 1987).  Whether the mortgage here included such an option was not addressed
by the parties, and the mortgage was not introduced into evidence.

2001); see also Butler v. Lomas and Nettleton Co., 862 F.2d 1015, 1019 n.6 (3d Cir.

1988).

Any party in interest may petition to have a sale set aside.  Pa. R.C.P. 3132.

"[T]he court may, upon proper cause shown, set aside the sale and order a resale or enter

any other order which may be just and proper under the circumstances."  Id.  The

petitioner must act within 20 days after the sale (or the sheriff's filing of a schedule of

distribution), as at the expiration of that time, the sheriff is required to deliver the deed for

recording and registry, if required, unless a petition to set aside has been filed.  Pa. R.C.P.

3135.

A "creditor" is defined by the Bankruptcy Code as an entity "that has a

claim against the debtor that arose at the time of or before the order for relief concerning

the debtor."  11 U.S.C. § 101(10)(A).  "The commencement of a voluntary case under a

chapter of this title constitutes an order for relief under such chapter."  11 U.S.C. §

301(b).  See generally In re Hudson, 859 F.2d 1418, 1425 (9th Cir. 1988).  Thus, in

general a creditor is one who holds a prepetition claim.

A claim is defined as a "right to payment," whether or not that right is

disputed, liquidated, matured or contingent.  11 U.S.C. § 101(5)(A).[6]  If an entity has no

pre-bankruptcy right to payment, then it does not hold a claim and is so not a creditor.

See Matter of Frenville, 744 F.2d 332, 336 (3d Cir. 1984); cert. denied, 469 U.S. 1160

---

[6]Section 101(5)(B) states that a claim also includes a "right to an equitable remedy
for breach of performance if such breach gives rise to a right to payment . . . ."

(1985).[7]  And, in large measure, chapter 13 reorganization plans are designed to provide

for such prepetition claims.  See 11 U.S.C. §§ 1322, 1325.

Furthermore, the question of when a right of payment arises is answered in

this circuit by state law, not by federal common law.  Matter of M. Frenville Co., Inc.,

744 F.2d at 337 (analyzing New York law); accord Jones v. Chemetron Corp., 212 F.3d

199, 205-06 (3d Cir. 2000):

> The parties dispute the correct standard for determining when
> the plaintiffs' claims arose.  Chemetron contends that the
> question of when the plaintiffs' claims arose is not governed
> by state law dictating when a cause of action accrues, but
> rather by a federal common law of bankruptcy.  Although
> significant authority supporting this proposition exists in other
> circuits, this circuit has held the reverse.  In Matter of M.
> Frenville Co., Inc., 744 F.2d 332 (3d Cir. 1984), cert. denied,
> 469 U.S. 1160, 105 S. Ct. 911, 83 L. Ed. 2d 925 (1985), this
> court held that in most circumstances a "claim" arises for
> bankruptcy purposes at the same time the underlying state law
> cause of action accrues.  Id. at 337.  We are cognizant of the
> criticism the Frenville decision has engendered, but it remains
> the law of this circuit.  See Matter of Penn Central Transp.
> Co., 71 F.3d 1113, 1114-15 (3d Cir. 1995) (applying rule of
> Frenville), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134
> L. Ed. 2d 951 (1996); In re Bryer, 216 B.R. 755, 759 (Bankr.
> E.D. Pa.1998) (same).  Accordingly, this court must look to
> Ohio tort law to determine when the plaintiffs' claims
> accrued.

(footnote omitted).

When Countrywide obtained a judgment in foreclosure, its mortgage

merged into that judgment.  See, e.g., In re A & P Diversified Technologies Realty, Inc.,

467 F.3d 337, 342 (3d Cir. 2006); In re Stendardo, 991 F.2d 1089, 1095 (3d Cir. 1993)

---

[7]The Third Circuit reiterated this viewpoint in In re Remington Rand Corp., 836
F.2d 825, 830 (3d Cir. 1988): "As this court stated in In re Frenville, the existence of a valid
claim depends on: (1) whether the claimant possessed a right to payment; and (2) when that right
arose."

("The [Pennsylvania] doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties."). Upon foreclosure sale, the mortgagee became the equitable title holder of the debtor's realty and had no right to payment from the former mortgagor, except as provided by Pennsylvania's Deficiency Judgment Act, 42 Pa. C.S.A. § 8103. See, e.g., Federal Nat. Mortg. Ass'n v. Guy Heavener, Inc., 16 Pa. Cmwlth. 386, 388 (1974); Reading Trust Co. v. Campbell, 159 Pa. Super. 197 (1946).

The Pennsylvania Deficiency Judgment Act sets a six-month deadline by which the former mortgagee can petition the state court to demonstrate that the value of the realty sold at foreclosure was less than the amount of the foreclosure judgment. 42 Pa. C.S.A. § 8103(d). Absent such a petition, the judgment is satisfied. Id. That six-month deadline can be stayed by the former mortgagee's filing of a bankruptcy petition. See In re Zinchiak, 406 F.3d 214 (3d Cir. 2005); Citizens Nat. Bank of Evans City v. Gold, 439 Pa. Super. 254 (1995). The collateral having been sold, the existence of a deficiency judgment gives rise to an unsecured claim. See generally In re Wilmington Hospitality LLC, 320 B.R. 73 (Bankr. E.D. Pa. 2005); cf. In re Wright 492 F.3d 829, 832 (7th Cir. 2007) (repossession of automobile could give rise to an unsecured deficiency claim).[8]

---

[8]It is not necessary to determine whether Countrywide may still seek an unsecured deficiency claim against the debtor. The debtor's challenge to the issuance of a sheriff's deed, his bankruptcy filing just prior to the expiration of six months after the actual sale, the specific language of the October 29th order which, inter alia, terminated the bankruptcy stay in favor of Countrywide (and the debtor), as well as the passage of the claims bar date make that issue complicated. Here, however, the debtor is objecting to a secured proof of claim and seeks to

(continued...)

Therefore, in this chapter 13 case, the evidence is undisputed that Countrywide purchased the debtor's realty at a prepetition foreclosure sale. Upon that sale, it became an equitable owner of the debtor's realty and was no longer a secured creditor. See In re Jones, 2003 WL 22843162, at *5 (Bankr. E.D. Pa. 2003) ("Thus, LaSalle's ownership of the Property does not foreclose it holding a claim, albeit an unsecured claim."); In re Townsville, 268 B.R. at 126; In re Young, 48 B.R. 678, 682-83 (Bankr. E.D. Mich. 1985). Given the prepetition sheriff sale, Mr. Bradley had no right to cure his mortgage delinquency under section 1322(b)(5) as he has proposed to do under the terms of his confirmed plan.[9]  11 U.S.C. § 1322(c)(1); see, e.g., In re Connors, 497 F.3d 314 (3d Cir. 2007); In re McKinney, 174 B.R. 330 (Bankr. S.D. Ala. 1994). Nor did he have any right to file a secured claim on behalf of Countrywide, as that entity was not entitled to receive any distribution under section 1325(a)(5) on the date that the debtor's fourth bankruptcy case commenced.

Despite this, the debtor argues that Countrywide held a "contingent secured claim." Debtor's Posthearing Memorandum, at 9.  I disagree.  All of the facts and legal claims regarding the validity of the foreclosure sale arose prepetition. See In re R. H. Macy & Co., 283 B.R. 140, 146 (S.D.N.Y. 1992) ("A contingent claim within the

---

[8](...continued)
reorganize by curing the arrearage on a secured proof of claim. Thus, whether Countrywide is an unsecured creditor is not germane to the three contested matters at issue.

[9]Although not expressly stated, Mr. Bradley's amended plan proposes to cure his alleged mortgage arrearage over the life of the chapter 13 plan while maintaining regular monthly mortgage payments pursuant to 11 U.S.C. § 1322(b)(5). See generally Rake v. Wade, 508 U.S. 464, 469 (1993) ("Section 1322(b)(5) expressly authorizes debtors to cure any defaults on a long-term debt, such as a mortgage, and to maintain payments on the debt during the life of the plan."); In re Padilla, 2008 WL 2573259, at *5 (Bankr. E.D. Pa. 2008).

meaning of section 101(5) is a debt that 'does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy.'") (quoting <u>In re Mazzeo</u> 131 F.3d 295, 303 (2d Cir.1997)); <u>In re Barcal</u>, 213 B.R. 1008, 1013 (B.A.P. 8th Cir. 1997).  Generally, the pendency of a judicial ruling does not render a claim contingent within the meaning of the Bankruptcy Code.  <u>See</u>, <u>e.g.</u>, <u>In re Vidal</u>, 2004 WL 2656893, at *1 (S.D. Fla. 2004) (pendency of an appeal does not render a claim contingent).

Clearly, the filing of a chapter 13 case, by itself, does not invalidate the foreclosure sale.  <u>See</u> <u>also</u> <u>In re Townsville</u>, 268 B.R. at 109 (foreclosure cannot be rejected by a chapter 13 debtor as an executory contract).  Nor does the failure of Countrywide to file a secured claim by the claims' bar date under Fed. R. Bankr. P. 3002(c) [Interim][10] and the filing of such a secured claim by the debtor under Fed. R. Bankr. P. 3004 invalidate the sale.  <u>See</u> <u>In re Jones</u>, 2003 WL 22843162, at *1-*2.  Nevertheless, the debtor seeks confirmation of a plan that classifies Countrywide as a secured creditor, proposes to cure his non-existent mortgage arrearage, and even contains an unsupportable provision that Countrywide "is obligated to set aside the sale and accept this sum as payment for its arrears."  Ex. D-4, ¶ 3.

---

[10]In light of the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and until official procedural rules are adopted under the Rules Enabling Act, the Judicial Conference has recommended the adoption of "Interim" procedural rules.  <u>See</u> <u>In re Kibbe</u>, 361 B.R. 302 (B.A.P. 1st Cir. 2007).  This district has accepted that recommendation by order dated October 5, 2005.  <u>See</u> Standing Order, Misc. No. 05-3008.

Under the facts as presented, the debtor's proposed amended plan cannot be confirmed.  See, e.g., In re Townsend, 268 B.R. at 126.  He is attempting to cure a mortgage delinquency after a prepetition foreclosure sale, in violation of section 1322(c)(1), which provision is incorporated into the confirmation process by section 1325(a)(1).  See generally In re Tate, 85 B.R. 49, 51 (Bankr. S.D. Ohio. 1987).[11]  Moreover, it would be inappropriate to render an advisory opinion determining the amount that may be owed to Countrywide if the debtor is ultimately successful in setting aside the foreclosure sale via a state court ruling.  See generally Coffin v. Malvern Federal Savings Bank, 90 F.3d 851, 853-54 (3d Cir. 1996) (bankruptcy court finding that creditor would be free to exercise its state law remedies after discharge was advisory and improper).  I have no basis to speculate upon the outcome of the pending state court petition.  See also In re Ewald, 298 B.R. 76, 81 (Bankr. E.D. Va. 2002) (confirmation denied where no evidence presented of likelihood that debtor would prevail in two circuit court cases).  Thus, until the state court rules, neither the debtor's secured proof of claim nor Countrywide's amended secured claim is allowable.[12]

---

[11]In light of the debtor's Form 22c, which states that the debtor has below median income, the debtor's proposed plan would also not comply with section 1322(d)(2).  This provision limits the length of a chapter 13 plan for debtors with below median income to three years, "unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."  The facts presented, including the multiple prior chapter 13 filings, did not meet the debtor's burden to establish cause.  See generally Hart v. Bowers, 2001 WL 34076355 (C.D. Ill. 2001); Dailey v. Home Federal, 1996 WL 131180 (N.D. Ill. 1996) (considered the debtor's numerous prior chapter 13 filings in deciding whether cause existed under section 1322(d) to extend plan length beyond three years).

[12]Therefore, I do not address the debtor's argument that Coutrywide is precluded from filing an amended claim after the debtor has filed a claim on its behalf.  I also do not decide whether, if the state court invalidated the foreclosure sale, Countrywide would hold a postpetition secured claim under section 1305(a)(2).  If so, then the filing of such a claim could only be

(continued...)

15

The chapter 13 trustee raises other confirmation issues, exclusive of those involving Countrywide, which issues need not be addressed.  The debtor, in his reply memorandum, suggests that this entire chapter 13 case be placed on hold until the state court ruling is made.  I decline that suggestion.  If the debtor intends to propose a reorganization plan that will provide for his prepetition creditors, he will be given a limited opportunity to do so, at which time the trustee may again seek dismissal.  Moreover, this case may be dismissed or converted under 11 U.S.C. § 1307(c), whichever is in the best interests of his creditors, if the debtor elects not to propose a second amended plan or if confirmation of such a plan is denied.

A separate order consistent with this memorandum shall be entered.


_____
BRUCE FOX
United States Bankruptcy Judge


Dated: August 26, 2008

---

[12](...continued)
undertaken voluntarily by that creditor.  See In re Perkins, 304 B.R. 477, 483 (Bankr. N.D. Ala. 2004); In re Wilkoff, 2001 WL 91624, at *7 (Bankr. E.D. Pa. 2001).